UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK RAMON GUERRERO, | Case No. 1:24-cv-001379-HBK |
| Plaintiff, | ORDER REMANDING CASE TO COMMISSIONER OF SOCIAL SECURITY[1] |
| v. | (Docs. 16, 18) |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Frank Ramon Guerrero ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability insurance benefits under the Social Security Act. (Doc. 1). The matter is currently before the Court on the parties' briefs, which were submitted without oral argument. (Docs. 16, 18). For the reasons stated, the Court orders this matter remanded for further administrative proceedings.

**I.    JURISDICTION**

Plaintiff protectively filed for disability insurance benefits on July 1, 2021, alleging an

---

[1] Both parties have consented to the jurisdiction of a magistrate judge, in accordance with 28 U.S.C. §636(c)(1). (Doc. 5).

onset date of July 18, 2011.[2] (AR 339-42). Benefits were denied initially (AR 78-106, 224-27), and upon reconsideration (AR 137-68, 239-44). Plaintiff appeared at a hearing before an Administrative Law Judge ("ALJ") on August 29, 2023. (AR 2270-2294). Plaintiff was represented by counsel and testified at the hearing. (*Id*.). On March 5, 2024, the ALJ issued an unfavorable decision (AR 14-30), and May 17, 2023 the Appeals Council denied review (AR 1-6). The matter is now before this Court pursuant to 42 U.S.C. § 405(g).

## II.    BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 47 years old on the date last insured. (*See* AR 364). Plaintiff testified that he graduated from high school. (AR 2274). He lived with his sister and her husband at the time of the hearing, but he testified that during the relevant period he lived in a motel room. (AR 2274). Plaintiff has work history as an industrial truck driver, stores laborer, line installer-repairer, and cable installer. (AR 2275-2277, 2285-2288). He testified he stopped working after an on-the-job injury where he fell 45 feet and tore ligaments in his right knee. (AR 2275). During the relevant period he used a walker and then a cane. (AR 2278-2279). He was unable to lift or carry any weight, needed to switch from sitting to standing every 10 to 15 minutes, was unable to bend his knee, had issues with swelling, and needed to elevate his leg during the day and night. (AR 2279-2283). Plaintiff testified that he had a pinched nerve in his back and depression during this period, had trouble interacting with people, and has always had a learning problem. (AR 2280-2282). He experienced chronic regional pain during the relevant period, and his pain was a ten on a scale of one to ten. (AR 2283-2284).

## III.    STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the

---

[2] Plaintiff was awarded benefits under Title XVI as of July 1, 2021. (AR 202-223).

Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

### IV.    FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. See 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the

claimant is not disabled.  20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience.  20 C.F.R. §

4

404.1520(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## V.      ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of July 18, 2011 through his date last insured of March 31, 2014.  (AR 56).  At step two, the ALJ found that, through the date last insured, Plaintiff had the following severe impairments: right knee degenerative joint disease with ligament injury and meniscus tear status post meniscectomy, obesity, and a learning disorder.  (AR 56).  At step three, the ALJ found that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment.  (AR 57).  The ALJ then found that, through the date last insured, Plaintiff had the RFC to

> perform light work as defined in 20 CFR 404.1567(b) except for the following restrictions: He must be able to alternate between sitting and standing every hour for 5 minutes.  The claimant can occasionally balance, stoop, kneel, crouch, crawl and climb ramps and stairs, but can never climb ladders, ropes, and scaffolds.  He can have no exposure to hazardous machinery or unprotected [heights] and cannot operate a motor vehicle.  He can perform simple routine tasks, follow simple short instructions, and tolerate occasional workplace changes.  However, he cannot have strict production rate or hourly quotas and must learn through demonstration.  In addition, the claimant can tolerate only occasional interaction with the public.

(AR 60).  At step four, the ALJ found that, through the date last insured, Plaintiff was unable to perform any past relevant work.  (AR 65).  At step five, the ALJ found that, through the date last insured, considering Plaintiff's age, education, work experience, and RFC, there are jobs that

exist in significant numbers in the national economy that Plaintiff can perform, including merchandise marker, laundry worker, and housekeeping cleaner.  (AR 65-66).  On that basis, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, at any time from July 18, 2011, the alleged onset date, through March 31, 2014, the date last insured.  (AR 67).

## VI.   ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II of the Social Security Act.  (Doc. 1).  Plaintiff raises the following issues for this Court's review:

1.   Whether the ALJ properly considered the closed period of disability benefits;

2.   Whether the ALJ properly considered Plaintiff's symptom claims; and

3.   Whether the RFC was supported by substantial evidence in light of the ALJ's consideration of the medical opinion evidence.

(Doc. 16 at 19-27).

## VII.   DISCUSSION

### A.  Symptom Claims

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  The ALJ first must determine whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Id*. (internal quotation marks omitted).  "The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).  "General findings are

insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 61). Plaintiff argues the ALJ failed to provide specific, clear, and convincing reasons for rejecting Plaintiff's subjective pain testimony. (Doc. 16 at 20-25). The Court agrees.

First, the ALJ found Plaintiff's daily activities were inconsistent with the extent of his alleged limitations. (AR 61). The ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). However, the Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016; *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her [testimony] as to her overall disability.").

Here, the ALJ found that "[o]utside of some difficulties bending and needing to [use] a chair while showering, [Plaintiff] can manage his personal care independently," he cannot prepare meals but can perform "some light household chores," he can shop in stores twice a month for

7

two hours, "he can ride a bicycle to get around," he can count change and use a computer, he engages with others "in person and over video chat," and he engages with the public while shopping and attending medical appointments.  (AR 61).  In support of this finding, the ALJ generally cited Plaintiff's hearing testimony, a portion of the initial Title II disability determination explanation, a third-party function report by Plaintiff's "caretaker" dated October 2021, a function report completed by Plaintiff dated April 2022, and a third-party function report from Plaintiff's "caretaker" dated April 2022.  (AR 61 (citing AR 78-85, 374-81, 422-28, 434-40).

Plaintiff argues the 2021 and 2022 function reports do not support the ALJ's finding regarding inconsistency between daily activities and his alleged limitations because they "do not relate to the disability period at issue." (Doc. 16 at 23).  The Court agrees. There is no indication that Plaintiff's claimed limitations or his reported activities detailed in these reports were intended to be retroactive to the relevant adjudicatory period with a date last insured of March 31, 2014.  Thus, any inconsistencies between Plaintiff's activities and the extent of his claimed Plaintiff's limitations in 2021 and 2022 is not a clear and convincing reason to discount symptom claims during the relevant adjudicatory period almost seven years earlier.  *See, e.g.*, *Dawson v. Astrue*, 2011 WL 3684615, at \*6 (W.D. Wash. June 27, 2011), *report and recommendation adopted*, 2011 WL 3684589 (W.D. Wash. Aug. 23, 2011) (finding Plaintiff's "level of functioning after the claimed disability period was not relevant to the determination of his level of functioning during that period. The ALJ's failure to differentiate between [Plaintiff's] daily activities during the claimed disability period and those he engaged in afterwards was error.").  Moreover, the Court's review of Plaintiff's hearing testimony, also generally cited by the ALJ, includes little to no discussion of his daily activities during the relevant time period, aside from his report that he lived in a motel and his mother came to cook for him and help him get clothes on because "he couldn't stand up." (Doc. 16 at 23 (citing AR 2274)).  Thus, the only possible "daily activity" identified by the ALJ from the relevant period is an examination record from 2012, summarized in the initial disability determination, noting that Plaintiff rode his bike to the appointment.  (AR 86).  This single notation, standing alone, does not rise to the level of a clear and convincing

reason to discount Plaintiff's subjective reports.

Second, "turning to the medical evidence, the [ALJ found Plaintiff's] statements regarding the limiting effect of [his] impairments are not consistent with the restrictions established in [his] treatment notes." (AR 61). In support of this finding, the ALJ acknowledged that physical examination during the relevant period noted decreased range of motion, inability to bend his knee, lack of full extension of the knee, "slight patella grind," moderate positive anterior and mild positive drawer tests, and difficulty with ambulation "early on in 2011" (AR 1164, 1308, 1318, 1153); however, the ALJ also noted that August 30, 2011 MRI results observed his tendons and ligaments were intact, on "multiple examinations" his anterior and drawer tests have been negative "with positive findings correlating to other instances when the claimant fell and injured his knee," and Plaintiff's knee was noted to be negative for instability. (AR 61 (citing AR 1066, 1198, 1211, 1318)).

Medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). However, an ALJ may not "cherry-pick" aspects of the medical record and focus only on those aspects that fail to support a finding of disability. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014). As noted by Plaintiff, the same examination notes cited by the ALJ in support of this finding also include extensive evidence that tends to support Plaintiff's allegations of pain, including August 30, 2011 MRI results also referencing "prominent intrameniscal degenerative changes and some prominent intrameniscal signal especially involving the posterior horn of the medial meniscus"; anterior and medial knee pain with range of motion testing; diagnostic maneuvers that were "clearly" positive for medial meniscal derangement and patellofemoral dysfunction/pain; markedly abnormal gait; marked restriction of flexion and extension of the right knee with "considerable" pain; and, notably, an examination note that Plaintiff's knee is "essentially horrible." (Doc. 16 at 24-25 (citing 1066 (noting constant pain, decreased sensation, and decreased range of motion in right knee), 1198 (noting chronic right knee pain and "considerable tenderness"), 1211 (noting abnormal gait with chronic pain syndrome), 1318 (diagnosing "severe arthrofibrosis of the right knee with extreme unresolved

9

pain" and recommending surgery).  The Court's independent review of the medical records during the relevant period also indicates that the ALJ mischaracterizes positive findings as "correlating" with "other instances when [Plaintiff] fell and injured his knee" (AR 61) as if those falls were unrelated to his consistent subjective complaints of instability resulting in falls as a symptom of his claimed right knee impairment. (AR 1111-12 (noting Plaintiff's knee "gave out" and he fell while walking across the street, and noting this has happened several times "due to the laxity of the ligament"), 1121 (reporting he falls frequently and complains of knee popping and locking, and treatment note observing he "hobbles painfully" and has a lot of edema), 1129 (his knee "gives out all the time"),1252 ("every time I see him, he has fallen at least once between the two visits and sometimes as often as twice").  Furthermore, medical records during the relevant adjudicatory period consistently "strongly" recommend authorization for surgery.  (AR 1112, 1121, 1127, 1130 (treatment plan noting that "at this point, everyone is saying that he needs surgery"), 1137, 1253, 1262, 1319.  For all of these reasons, the ALJ's finding that Plaintiff's reports were not consistent with treatment notes is not a clear and convincing reason, supported by substantial evidence, to discount his symptom claims.

Third, found Plaintiff has shown "significant signs of improvement, with many of his more recent treatment notes indicating that although he was still limited, he regained some extension with respect to his knee."  (AR 62).  The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c), 416.929(c); *see Tommasetti*, 533 F.3d at 1040 (9th Cir. 2008) (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).  However, symptom improvement should be considered within the context of the "overall diagnostic picture." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("That a person ... makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace.").  Here, the ALJ cites a single treatment note in support of this finding, which, as noted by Plaintiff, also includes observations that Plaintiff is in constant moderate to severe right medial knee pain, his medications are not controlling the pain, "prominent intrameniscal degenerative changes and some prominent intrameniscal signal especially involving

the posterior horn of the medial meniscus," limited flexion and extension of the knee, abbreviated stance phase of gait on right lower extremity, considerable medial knee pain with flexion and extension, and diffuse tenderness over right knee with palpation. (Doc. 16 at 25 (citing AR 1140-42)). Moreover, as detailed extensively above, treatment records dated after this January 24, 2012 examination during the relevant adjudicatory period document ongoing evidence of chronic pain syndrome, abnormal gait, limited flexion, falls due to instability of the knee, and urgent recommendations for surgery. For all of these reasons, the ALJ's general finding that "many of his more recent treatment notes" indicated "significant signs of improvement" is not supported by the record, and is therefore not a clear, convincing, and specific reason, supported by substantial evidence, to reject Plaintiff's symptom claims.

Fourth, the ALJ noted "there was no significant discussion of the claimant's discussion [sic] during the period in question after 2012, which suggests that he did not receive any further treatment during this timeframe." Unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be the basis for rejection of Plaintiff's symptom claims unless there is a showing of a good reason for the failure. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). However, to the extent it was offered as such, this statement, standing alone, does not rise to the level of a specific, clear, and convincing reason to entirely discount Plaintiff's symptom claims during the relevant adjudicatory period.

The Court concludes that the ALJ did not provide clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom claims. On remand, the ALJ must reconsider Plaintiff's symptom claims.

**B. Additional Assignments of Error**

Plaintiff also argues that the ALJ erred by failing to consider a closed period of disability benefits, and the assessed RFC was not supported by substantial evidence because the ALJ improperly considered the medical opinion evidence. (Doc. 16 at 19-20, 25-28). Because the ALJ's consideration of these issues is interrelated with the reevaluation of Plaintiff's symptom claims, including a review of the medical evidence as it relates to those claims, the Court declines to address these challenges in detail here On remand, the ALJ is instructed to reconsider

11

Plaintiff's symptom claims, and conduct a new sequential analysis, including a reassessment of the RFC and step five finding if necessary.

**C. Remedy**

Plaintiff contends that the proper remedy in this case is a remand for further administrative proceedings.  (Doc. 16 at 27-28); *see Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not appropriate when further administrative proceedings would serve a useful purpose).  The Court agrees.  Here, the ALJ improperly considered Plaintiff's symptom claims, which calls into question whether the assessed RFC, and resulting hypothetical propounded to the vocational expert, are supported by substantial evidence.  "Where," as here, "there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Treichler*, 775 F.3d at 1101.  On remand, the ALJ should reevaluate Plaintiff's symptom claims.  The ALJ should conduct a new sequential analysis, reassess Plaintiff's RFC and, if necessary, take additional testimony from a vocational expert which includes all of the limitations credited by the ALJ.

Accordingly, it is **ORDERED**:

1. Plaintiff's Motion for Summary Judgment (Doc. 16) is GRANTED.

2. Defendant's Cross Motion for Summary Judgment (Doc. 18) is DENIED.

3. Pursuant to sentence four of 42 U.S.C.§ 405(g), the Court REVERSES the Commissioner's decision and REMANDS this case back to the Commissioner of Social Security for further proceedings consistent with this Order.

4. An application for attorney fees may be filed within thirty (30) days.

5. The Clerk shall enter judgment in favor of Plaintiff, terminate any motions and deadlines, and close this case.

Dated:    March 27, 2026

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE